AMATO *v.* LAUDICINA.

SPECIFIC PERFORMANCE—PARTITION AGREEMENT—DIVIDING WALL BETWEEN STORES IN SAME BUILDING.

Agreement in which partners agreed to wind up business and partition the property whereby defendant was to get 1 lot and a portion of building on lot adjoining thereto "now occupied by the shoe store known as 23044 Van Dyke avenue" and plaintiff the larger portion of the building "now occupied by the pool room known as 23046 Van Dyke avenue" *held,* controlling in suit for specific performance and to have intended partition of the premises according to lines of the dividing wall, in which there was a jog of 2 feet some 45 feet from the front, where the 2 businesses had been theretofore conducted on either side of the wall.

REFERENCES FOR POINTS IN HEADNOTES
40 Am Jur, Partition § 16 *et seq.*

Appeal from Macomb; Spier (James E.), J. Submitted October 10, 1956. (Docket No. 82, Calendar No. 46,668.) Decided December 6, 1956.

Bill by Joe Amato and Frances Amato against Joe Laudicina and Angeline Laudicina for specific performance of contract to partition real property. Bill dismissed. Plaintiffs appeal. Reversed and remanded.

*Carroll & Gallagher* (*Howard R. Carroll,* of counsel), for plaintiffs.

*Louis J. Colombo* (*Louis J. Colombo, Jr.,* of counsel), for defendants.

BLACK, J. This is a suit for specific performance of an agreement for partition of business property owned by tenants in common. The only question is whether, according to apparent tenor of the mentioned agreement, plaintiffs are entitled on their bill to a decree of partition specifying presently identified physical construction as the line of partition. The chancellor held that plaintiffs are not entitled to such relief and entered a decree dismissing their bill. From that decree plaintiffs have appealed.

Joe Amato and Joe Laudicina, theretofore engaged as partners carrying on a pool and billiard business, acquired as equally sharing tenants in common 2 separately situated lots fronting on north-south Van Dyke avenue in Macomb county's Warren township. Contributing equally to the construction job, the 2 partners proceeded to erect a business building on the southernmost of the 2 lots. The building, approximately 40 feet in width (outside measurement), was designed to accommodate separate businesses and, to that end, a longitudinal east-west partition divided it into one part retained

by the partners for their pool and billiard business and another part leased by them to a tenant or tenants "as a shoe store."

That which became the shoe store was and is 15 feet in width at street front (inside measurement). The billiard and pool hall then and now utilizes the remaining street front width of the building, that is, 23 feet (inside measurement). A jog in construction of the partition, approximately 45 feet toward rear of the building, adjusted such inside widths so that, between jog and rear wall of building, the billiard and pool hall is 25 feet wide and the shoe store is 13 feet wide.

The building, following its construction, was utilized as indicated and without incident until December 6, 1949. On that date the partners entered into a written agreement providing for winding up of the pool and billiard business and transfer to Joe Laudicina of Joe Amato's interest in the northernmost of the 2 mentioned lots. As to the mentioned business property the agreement provides:

"5. It is agreed that 5 years from date hereof, the party of the first part and party of the second part will partition the premises described above, known as Lot No 305 of Piper's Van Dyke Subdivision No 1, and that party of the first part shall be entitled to that portion of said real estate now occupied by the shoe store known as 23044 Van Dyke avenue, Van Dyke, Michigan, and party of the second part shall be entitled to that portion of said real estate now occupied by the pool room known as 23046 Van Dyke avenue, Van Dyke, Michigan. Any expense necessary for alterations to divide the property as above mentioned, will be shared equally by the parties hereto. During the 5 year period of this agreement, any inside repairs to the shoe store will be the obligation of the party of the first part and any inside repairs to the pool room will be the obligation of the party of the second part. Any repairs to the

outside of the building or the roof shall be shared equally by both parties. Both parties agree to share the burden of the real-estate taxes on the property."

The chancellor's reason for denial of relief to plaintiffs, which in our view is unsound, is seen in the following portion of his opinion:

"We have here the plaintiff in this case claiming he understood one thing and the defendants claiming they understood another by that phraseology, so we have here the situation of a plaintiff asking for specific performance of the contract in which he understood one thing and the other side understood another. When we have that situation it is clear before the court, the court cannot enforce that contract by specific performance. I suppose if they had further relief prayed for, to reform the contract or interpret it, what the parties meant, we could make a different ruling, but as this case comes to this court for specific performance all we can do is deny it.

"If this were a suit for reformation the preponderance of evidence in the case is that the parties intended that there would be an equal division of the property and of this building because the weight of testimony as it came in would tend to point that way. That case isn't before the court. All we have here is one for specific performance, so all we can do on this bill is deny the relief. That leaves them with a contract that is still subject to interpretation (reformation). There is nothing before the court; no relief can be granted any further than that, so that we will have to enter that order denying the relief prayed for here."

We hold that the terms of the written agreement are controlling; that no ambiguity exists on face thereof; that the parties manifestly intended final partition of the premises according to lines of the dividing wall described above, and that no good reason has been shown for withholding of decree making

good the original and quoted undertakings of the parties.

Reversed and remanded for entry of decree in accordance with the prayer of plaintiffs' bill. Costs to plaintiffs.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, and CARR, JJ., concurred.

BOYLES, J., did not sit.